WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelet Michael Smith, | No. CV-25-01441-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| David McDowell, *et al.*, | |
| Defendants. | |

At issue is Defendants Judge David McDowell and Jeff Fine's Motion to Dismiss (Doc. 38, MTD), to which Plaintiff Michelet Michael Smith responded in opposition (Doc. 45, Resp.) and Defendants replied in support (Doc. 47, Reply.) Also at issue is Defendants' Motion for Leave to File Excess Pages (Doc. 40, Defs.' Mot. Leave) and Plaintiff's Motion for Leave to File Surreply (Doc. 49, Pl. Mot. Leave). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

This matter arises out of a family law case in Maricopa County, Arizona in which Defendant Judge McDowell permitted a substitution of opposing counsel over Plaintiff's avid objections. Plaintiff alleged the following claims against Defendants: (1) violation of due process under the Fourteenth Amendment; (2) violation of equal protection under the Fourteenth Amendment; (3) violation of privacy rights under HIPAA and RFPA; (4) constitutionally tortious conduct under 42 U.S.C. § 1983; (5) declaratory and injunctive

1  relief under the *Ex parte Young* Doctrine; (6) failure to protect confidential records; and,
2  (7) arbitrary and unequal application of judicial standards. (Doc. 1, Compl. ¶¶ 20–39.)

3        As a matter of course, Plaintiff filed his First Amended Complaint ("FAC") on
4  June 23, 2025, and added an eighth count of "Negligence Under Arizona Law (Standard of
5  Care Informed by HIPAA.)" (Doc. 15, FAC, ¶¶ 52–59.)

6        On July 14, 2025, Plaintiff filed his Second Amended Complaint ("SAC") adding a
7  ninth count entitled "Systemic Misuse of Public Resources and Abuse of Taxpayer-Funded
8  Authority" and a tenth count entitled "Denial of Access to Court and Retaliation for
9  Asserting Legal Rights." (Doc. 24, SAC, ¶¶ 75–97.)

10       On August 11, 2025, Defendants moved to dismiss Plaintiff's SAC. Defendants'
11 Motion to Dismiss was three pages over the limit set forth in Local Rule 7.2, so Defendants
12 separately requested leave to file excess pages for the same. (Defs.' Mot. Leave.) Plaintiff
13 objected to both. (Resp.; Doc. 46.) Later, Plaintiff moved for leave to file a surreply to
14 Defendants' Motion to Dismiss (Pl. Mot. Leave), to which Defendants responded (Doc. 52)
15 and Plaintiff replied (Doc. 53).

16       On September 4, 2025, Plaintiff filed a Notice Clarifying Scope of Claims and
17 Relief, in which he voluntarily withdraws the state-law tort claims without prejudice under
18 Federal Rule of Civil Procedure 41(a)(2). (Doc. 50, Pl. Not., ¶ 2.) Therein, Plaintiff also
19 clarified that he sought no damages from Defendants in their individual capacity, and that
20 he seeks "prospective, not retroactive" federal relief. (*Id.* ¶¶ 1, 3.)

21       First, the Court must evaluate which, if any, claims survive Defendants' Motion to
22 Dismiss. Second, the Court will determine whether Plaintiff should be granted leave to
23 amend his Complaint. Lastly, the Court will address the remaining pending motions that
24 include Defendants' Motion for Leave to File Excess Pages and Plaintiff's Motion for
25 Leave to File Surreply.

26   **II.    MOTION TO DISMISS**

27       Defendants move to dismiss Plaintiff's SAC under multiple theories including, as
28 relevant here, lack of subject matter jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(1), and judicial and quasi-judicial immunity. As a matter of procedure, the parties improperly treat Plaintiff's SAC as the operative complaint. Plaintiff's SAC was filed without leave of this Court or Defendants' prior consent as required by Federal Rule of Civil Procedure 15(a)(2). The operative complaint in this matter is Plaintiff's FAC. Despite this procedural technicality, it is still appropriate to consider the parties' complete briefing on the issue of whether Plaintiff's claims should be dismissed. As Plaintiff himself represents, the function of the SAC was to add claims and allegations, not to subtract them. (Doc 23.) Therefore, the parties' briefing of the claims and facts alleged in the SAC encompasses all of Plaintiff's operative claims and facts asserted in the FAC. The parties have had ample opportunity to be heard on whether Plaintiff's claims should be dismissed from both the FAC and SAC, so any ruling reached by this Court on the Motion to Dismiss will apply with equal force to the SAC as it does to the FAC.

### A.    Subject Matter Jurisdiction

#### 1.    *Legal Standard*

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). "[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine

whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513–14 (2006).

The *Rooker–Feldman* doctrine provides that a federal district court lacks subject matter jurisdiction to consider an appeal from the final judgment of a state court. *Noel v. Hall*, 341 F.3d 1148, 1154–55 (9th Cir. 2003). As the Ninth Circuit has noted, the doctrine is easy to apply in its routine form; a disappointed party may not seek reversal of a state court judgment by appealing to a federal district court. *Id.* at 1155. The *Rooker–Feldman* doctrine also prohibits federal district courts from considering *de facto* appeals—suits in which "the adjudication of the federal claims would undercut the state ruling." *Bianchi v. Rylaardsam*, 334 F.3d 895, 898 (9th Cir. 2003). Thus, *Rooker–Feldman* "looks to federal law to determine whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Id.* at 901 (citation and internal quotation marks omitted). And when refusing to consider a forbidden *de facto* appeal, a federal district court must also decline "to decide any issue in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1159 (quoting *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)). "If a federal plaintiff has brought a de facto appeal from a state court decision—alleging legal error by the state court and seeking relief from the state court's judgment—he or she is barred by *Rooker-Feldman*." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004).

2.    *Analysis*

Defendants argue that all of Plaintiff's claims must be dismissed under the *Rooker-Feldman* doctrine because Plaintiff essentially "asks this Court to reverse Judge McDowell's ruling and Clerk Fine's filing of the same." (MTD at 8–9.) Plaintiff argues that he is not requesting the Court to vacate the fee award or reverse findings; rather, he is "alleging independent constitutional injuries caused by defendants' conduct—even if related to, or occurring in the shadow of, state proceedings." (Resp. at 5.) In reply, Defendants argue that all of Plaintiff's claims are, in essence, seeking "to enjoin (and

- 4 -

essentially vacate) state court orders regarding a substitution of counsel and a resulting judgment he does not like, because he lost." (Reply at 5.)

Whether *Rooker–Feldman* bars Plaintiff's claims turn on what Plaintiff alleges as his harm and from where that harm arose. The FAC and SAC are both replete with alleged errors of the state court. At the heart of Plaintiff's allegations is a minute entry granting the substitution of counsel for Plaintiff's opposing party ("Minute Entry") issued by Defendant Judge McDowell and entered by Defendant Fine. (FAC ¶ 7; SAC ¶ 10.) That Minute Entry, according to Plaintiff, was not signed or entered as an order under procedural rules unique to Arizona family law courts. (*Id.*) Following this allegedly defective Minute Entry, Defendant Judge McDowell awarded the opposing party attorney's fees and costs "based on pleadings filed by an attorney whose representation was procedurally defective." (FAC ¶ 14; SAC ¶ 17.) Defendant Judge McDowell also denied Plaintiff's motions challenging the Minute Entry in further violation of Arizona family law court rules. (FAC ¶ 15–16; SAC ¶ 18–19.) Lastly, Plaintiff alleges that Defendant Judge McDowell "inconsistently applied legal standards" as to him, "requiring Plaintiff, a self-represented litigant, to strictly support his motions with detailed legal authority while failing to hold the opposing party to the same procedural standard." (FAC ¶ 17; SAC ¶ 20.)

For Defendant Fine's part, Plaintiff alleges he erroneously issued several subpoenas that were requested by the substituted counsel who—according to Plaintiff—gained entry to the family law proceedings under the facade of a defective state court ruling (the Minute Entry). (FAC ¶¶ 7–8; SAC ¶¶ 10–11.) As a direct result of the Minute Entry granting substitution of counsel, Plaintiff alleges that his health and financial records were illegally obtained by the substituted counsel in accordance with the subpoenas issued by Defendant Fine. (FAC ¶ 18; SAC ¶ 21.)

Accordingly, Plaintiff pleads:

> The court's actions, based on an unsigned and unentered minute entry, deprived Plaintiff of due process and created a void foundation for subsequent orders[.] Despite these procedural defects, the Court permitted Jessica Reynolds to act

- 5 -

> as counsel of record, and Jeff Fine, Clerk of the Superior Court, issued subpoenas at her request without verifying the validity of her representations. These actions contributed to ongoing violations of Plaintiff's due process rights and facilitated unauthorized access to protected information.

(FAC ¶¶ 11–12; SAC ¶¶ 14–15.) Against this backdrop, the Court turns to each of Plaintiff's claims to determine whether it may consider any of them in light of *Rooker–Feldman*.

First, Plaintiff asserts that Defendants, in acting under the color of state law, deprived Plaintiff of due process, "fair notice, [and] a meaningful opportunity to be heard" by "failing to enforce required substitution protocols under ARFLP Rule 9(d), permitting unauthorized counsel to act without court approval, and enabling legal actions to proceed without valid representation or notice." (FAC ¶ 23; SAC ¶ 27.) Plaintiff further alleges that Defendant Judge McDowell failed to rule on pending motions within the sixty-day deadline imposed upon the state court by the Arizona Constitution and state court rules. (FAC ¶¶ 24–26; SAC ¶¶ 28–30.) Plaintiff's due process claims turn on whether the Minute Entry was issued and entered in error, thereby rendering later state court actions to also be in error such that Plaintiff was deprived of due process. This is precisely the kind of appellate review that *Rooker-Feldman* prohibits. Plaintiff's first claim against Defendants is barred.

Next, Plaintiff brings a claim under the Equal Protection Clause of the Fourteenth Amendment, arguing that Defendants disparately held Plaintiff to a higher procedural standard in comparison to the substituted counsel. (FAC ¶ 28; SAC ¶¶ 32–34.) Plaintiff specifically asserts that Defendant Judge McDowell "awarded attorney fees based on filings from improperly substituted counsel while denying Plaintiff's motions without explanation." (SAC ¶ 57; *see* FAC ¶¶ 44–49.) As for Defendant Fine, Plaintiff alleges he "fail[ed] to ensure the legal sufficiency" of the Minute Entry permitting substitution of opposing counsel. (FAC ¶ 50; SAC ¶ 64.) But as discussed, Plaintiff cannot show the state court treated him disparately without upending the Minute Entry and scrutinizing Defendant Judge McDowell's judgements that reportedly "denied, delayed, or dismissed"

Plaintiff's motions for technical non-compliance with state court rules. Plaintiff's second and seventh claims are therefore barred under the *Rooker-Feldman* doctrine.

Plaintiff alleges that Defendants violated his privacy rights "by permitting unauthorized access to Plaintiff's sensitive medical and financial records through the issuance and use of improperly obtained subpoenas." (FAC ¶ 30; *see* SAC ¶¶ 36–41.) This alleged conduct gave rise to Plaintiff's separately pled "negligence under Arizona Law" claim and a "constitutional tort" claim, in that Defendants breached their duty of care established by the Health Insurance Portability and Accountability Act and Right to Financial Privacy Act. (FAC ¶¶ 36–37, 52–59; SAC ¶¶ 42–46, 66–74.) Relatedly, Plaintiff asserted a "failure to protect confidential records" claim, alleging that Defendants "failed to issue a protective order or seal the records" of Plaintiff's medical and financial documents released in accordance with the subpoenas issued by the state court. (FAC ¶¶ 40–42; SAC ¶¶ 52–55.) Once again, each of these claims turn on—or are inextricably intertwined with—whether Defendant Judge McDowell's Minute Entry and Defendant Fine's subsequent subpoenas issued to the substituted counsel were made and entered in error. *Rooker-Feldman* bars counts three, four, six, and eight.[1]

Formulated as Plaintiff's fifth claim against Defendants, Plaintiff asserts that he seeks "declaratory and injunctive relief" under the *Ex parte Young* doctrine. (FAC ¶ 38; SAC ¶¶ 47–50.) Plaintiff's requested relief is predicated upon whether this Court has jurisdiction to grant such relief. As shown above, the Court has no subject matter jurisdiction to hear Plaintiff's claims against Defendants under the *Rooker-Feldman* doctrine because such claims require judicial scrutiny of the Minute Entry permitting substitution of opposing counsel. Therefore, Plaintiff's fifth claim is barred.

---

[1] After full briefing on the Motion to Dismiss, Plaintiff voluntarily dismissed "any state-law tort counts remain[ing] in the operative pleading" in his Notice Clarifying Scope of Claims and Relief. (Pl. Not. ¶ 2.) Plaintiff later attempts to rescind the voluntary dismissal, writing that he "merely clarified that [he] is not pursuing state-law tort claims at this stage." (Doc. 53.) While Plaintiff's Notice appears to comport with Federal Rule of Civil Procedure 41, the Court will treat Plaintiff's state-law tort claim (count eight) as ongoing for the purposes of resolving the present Motion to Dismiss.

As to his ninth claim brought exclusively in the SAC,[2] Plaintiff alleges that Defendants abused governmental power and public resources in violation of the Public Trust doctrine, § 1983, and the Fifth and Fourteenth Amendments. (SAC ¶¶ 76–87.) The factual underpinning of this claim requires that the Minute Entry, and all rulings and filings that cascaded therefrom, were done in error such that the Defendants' actions amount to an abuse and misuse of power and public resources. Such an inquiry is prohibited under the *Rooker-Feldman* doctrine, so Plaintiff's ninth claim is also barred.

Lastly, Plaintiff alleges that Defendants' conduct "deprived Plaintiff of his constitutionally protected right to access the courts and petition the government for redress of grievances in violation of the First and Fourteenth Amendments" and the Arizona constitution. (SAC ¶ 89). Once again, Plaintiff's claim rises or falls upon whether the Minute Entry was made and entered in error. Plaintiff's tenth and final claim against Defendants is barred.

In sum, each of Plaintiff's claims and requested relief is grounded upon alleged injuries caused by the Minute Entry itself. The Court may not "undercut the state ruling" found in the Minute Entry, nor may it consider the award of attorney's fees and costs against Plaintiff, the issuance of subpoenas, or the release of medical or financial documents in response to those subpoenas because they are "'inextricably intertwined' with that state ruling. *See Bianchi*, 334 F.3d at 898; *Noel*, 341 F.3d at 1159. Accordingly, the Court must dismiss all of Plaintiff's claims for lack subject matter jurisdiction.

**B.  Immunity Defense**

  1.  *Legal Standard*

Judicial and quasi-judicial immunity protect a defendant from personal immunity when "the plaintiff seek[s] to impose individual liability upon a government officer for actions taken under color of . . . law." *Acres Bonusing, Inc. v. Marston*, 17 F.4th 901, 909 (9th Cir. 2021). Judges enjoy judicial immunity from claims based on a "judicial act," such

---

[2] While the assessment of the operative claims under the FAC ends with Plaintiff's eighth claim, the Court has already noted that the parties extensively briefed Plaintiff's ninth and tenth claims brought under his SAC. As such, this Court will address whether those claims could survive under *Rooker-Feldman*.

as those acts "involved in resolving disputes between parties." *Forrester v. White*, 484 U.S. 219, 225–27 (1988). Courts will find an act is judicial if it "relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). In addition to "protecting the finality of judgments" and "discouraging inappropriate collateral attacks," judicial immunity "protect[s] judicial independence by insulating judges from vexatious action prosecuted by disgruntled litigants." *Forrester*, 484 U.S. at 225 (citing *Bradley v. Fisher*, 80 U.S. 335, 348 (1871)). Only two exceptions exist. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (internal citations omitted).

"Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1387 (9th Cir. 1987). "When judicial immunity is extended to officials other than judges, it is because their judgements are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (citation and internal quotation marks omitted). For example, a clerk is entitled to quasi-judicial immunity for filing a document with the court, provided the acts complained of are within the clerk's jurisdiction. *Mullis*, 828 F.2d at 1390.

        2.     *Analysis*

Defendants assert that they are immune from suit pursuant to judicial and quasi-judicial immunity. (MTD at 5–7.) Plaintiff argues that Defendants enjoy no immunity from his claims because Defendants' conduct falls outside the scope of judicial acts, and he alleges prospective, not retroactive, relief that falls outside the scope of this type of immunity. (Resp. at 7–8.)

1      Whether judicial or quasi-judicial immunity applies depends, in part, on whether a
2 plaintiff is seeking relief from the defendant in his or her official or individual capacities.
3 *See Acres Bonusing, Inc.*, 17 F.4th at 908–09 (distinguishing suits against officials in their
4 personal capacities, as opposed to their official capacities, in which the former may be
5 shielded by judicial immunity but not the latter). Plaintiff has vacillated between asserting
6 his claims against Defendants in their official or individual capacities.[3] Plaintiff has
7 nonetheless been clear that he seeks relief from Defendants in a way that avoid Eleventh
8 Amendment sovereign immunity issues under *Ex parte Young*. (FAC ¶ 38; SAC ¶¶ 48–50;
9 Resp. at 2, 8–9; *see also* Pl. Not. ¶¶ 1, 3.) In taking substance over form, the Court will
10 consider Plaintiff's arguments in opposition to Defendants' immunity defense in the
11 context of avoiding sovereign immunity under the *Ex parte Young* doctrine.

12     Under the *Ex parte Young* doctrine, a plaintiff can seek relief against a state official
13 in their individual, not official, capacity to avoid summoning Eleventh Amendment
14 immunity of the sovereign state itself. *Ex parte Young,* 209 U.S. 123, 159 (1908). As
15 applied here, Plaintiff effectively seeks relief from Defendants in their individual capacity
16 not only in the substance of the facts he alleges, but under the *Ex parte Young* doctrine as
17 a matter of law. This is a critical distinction because, if Plaintiff was truly seeking relief
18 from Defendants in their "official" capacity, the State of Arizona would be a party in
19 interest and Defendants would have to assert sovereign immunity to be completely
20 protected from this suit. However, because Plaintiff seeks relief from Defendants in their
21 individual capacity in fact and law, Defendants could successfully dismiss all of Plaintiff's
22 claims under a theory of judicial and quasi-judicial immunity.

23     Here, Plaintiff argues that Defendants' acts are non-judicial or administrative and
24 therefore do not receive the protection of judicial immunity. While Plaintiff paints
25 Defendant Judge McDowell's acts as "non-judicial" (FAC ¶ 22; *see* SAC ¶ 26), his ruling
26 to allow substitution of counsel, denial of a protective order, and discretion in denying

---

[3] For example, Plaintiff stated that the damages he seeks are against Defendants in their individual capacities, (Resp. at 8-9), then represented that he seeks no damages against Defendants in their individual capacities. (Pl. Not. ¶¶ 1, 3).

- 10 -

additional briefing on issues before him are certainly judicial in nature and in clear design to resolve the disputes before him. Similarly, the issuance of subpoenas by Defendant Fine is an integral part of the judicial process squarely within a clerk's role and authority. Both Defendants are immune from suit under the judicial and quasi-judicial immunity doctrine. Plaintiff's claims must be dismissed.

Plaintiff further argues that Defendants are not protected by judicial or quasi-judicial immunity because he seeks prospective, not retroactive, relief. (FAC ¶ 38; SAC ¶¶ 48–50; Resp. at 7–9.) The kind of relief sought by a plaintiff has no part to play in whether this kind of immunity applies, "[b]ecause judicial immunity is an immunity from suit and not just from damages . . ." *Acres Bonusing, Inc.*, 17 F.4th at 916 (quoting *Stump*, 435 U.S. at 362). Because Defendants are immune from Plaintiff's suit, Plaintiff's requested relief is barred no matter if it was prospective or retroactive.

### III.   LEAVE TO AMEND

In his Response to Defendants' Motion to Dismiss, Plaintiff requested leave of court to amend his SAC. (Resp. at 2, 13–14.) At this stage, a party must seek leave to amend from the court absent the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). Although the decision to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted).

The policy in favor of allowing amendments is subject to limitations. After a defendant files a responsive pleading or a motion under Rule 12(b), (e), or (f), the propriety of leave to amend is determined by five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

"Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003). Relatedly, if defective claims in a complaint can be cured, the plaintiff is entitled to amend the complaint before his claims are dismissed with prejudice. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Here, nothing in the record or the parties' briefing suggests that Plaintiff seeks an amendment in bad faith. Still, any amendment will be futile. Plaintiff has already amended his Complaint once as a matter of course. His SAC, while procedurally inoperative, suffered the same fatalities of his FAC that cannot survive Defendant's Motion to Dismiss. The heart of all facts alleged by Plaintiff is that the allegedly erroneous Minute Entry granted by Defendant Judge McDowell and entered by Defendant Fine caused Plaintiff's various injuries. No matter how many federal laws or constitutional provisions Plaintiff recites or how many amendments Plaintiff makes, these central facts have not changed, nor will they. Upon these facts the Court finds it appropriate to dismiss all of Plaintiff's claims as alleged in his FAC and SAC, not only for lack of subject matter jurisdiction, but under judicial and quasi-judicial immunity that protects the Defendants from suit. Due to the futility of any amendment to Plaintiff's now-twice amended Complaint, the Court will deny Plaintiff's request for leave to amend and will dismiss Plaintiff's claims with prejudice.

**IV.   REMAINING PENDING MOTIONS**

Also pending before this Court are Defendants' Motion for Leave to File Excess Pages and Plaintiff's Motion for Leave to File Surreply, each of which stem from the Motion to Dismiss. This Court decided Defendants' Motion to Dismiss on arguments presented in pages four through nine of the same. Because the Court's decision rested on the pages well within the page limit set forth in Local Rule 7.2, Defendants' Motion for Leave to File Excess Pages is moot.

As for Plaintiff's Motion for Leave to File Surreply, Plaintiff argues that good cause exists to permit a surreply because Defendants raised new arguments in their Reply to the Motion to Dismiss. (Leave for Surreply at 1.) As relevant here, Plaintiff states that Defendants "recast Plaintiff's prospective relief as a request that this Court vacate state-

1  court orders (including Rooker-Feldman)" and "[e]xpand[ed] absolute judicial/quasi-
2  judicial immunity to non-adjudicative, administrative acts by clerical staff." (*Id*. at 2.)

3  Plaintiff fails to persuade that good cause exists to extend briefing before this Court.
4  In the Motion to Dismiss, Defendants staunchly cast Plaintiff's relief as essentially asking
5  the Court to vacate the state court's Minute Entry and related actions. (MTD at 8–9.) The
6  fact that Defendants cited language from Plaintiff's Second Amended Complaint in their
7  Reply that they did not cite in their Motion to Dismiss does not mean Defendants raised a
8  new argument. The argument remained the same: that Plaintiff's claims run afoul of the
9  *Rooker-Feldman* doctrine.

10  Next, Defendants did not expand their immunity defense "to non-adjudicative,
11  administrative acts by clerical staff." (Leave for Surreply at 2.) Defendants have
12  maintained that their respective actions taken in the underlying family law matter were
13  judicial ones, thereby entitling them to immunity. The Court notes that, in apparent
14  confusion as to what capacity Defendants are sued, Defendants do suggest offhand that
15  qualified immunity may provide another immunity defense for the first time in their Reply.
16  (Reply at 6 n.2). Still, this Court already determined that Plaintiff repeatedly made clear
17  that he seeks damages against both Defendants under the *Ex parte Young* doctrine, thereby
18  requiring suit against Defendants in their individual capacities and permitting Defendants
19  to seek immunity from suit under the judicial and quasi-judicial immunity doctrine. Further
20  briefing on additional types of immunity are unnecessary. Because no new arguments were
21  raised that this Court relied upon in reaching this Ruling, Plaintiff's Motion for Leave to
22  File Surreply is moot.

23  **V.     CONCLUSION**

24  This Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-*
25  *Feldman* doctrine. Even if some or all of Plaintiff's claims evaded dismissal for lack of
26  subject-matter jurisdiction, those claims still fail because Defendants are immune from suit
27  under the judicial and quasi-judicial immunity doctrine. The parties' briefing—and this
28  Court's Ruling—focus squarely on the issues raised in the first seventeen pages of

1  Defendant's Motion to Dismiss such that Defendant's request to extend the page limit and
2  Plaintiff's request to file a surreply are both moot. Plaintiff, having already amended his
3  Complaint twice to no avail, may not amend once more as the defect appearing in each
4  amendment cannot be cured. All of Plaintiff's claims are dismissed with prejudice, and
5  Plaintiff's request for leave to amend is denied.

6  **IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss
7  (Doc. 38.)

8  **IT IS FURTHER ORDERED** dismissing Plaintiff's First Amended Complaint
9  (Doc. 15) with prejudice. The Clerk of Court shall enter Judgment accordingly and
10 terminate this matter.

11 **IT IS FURTHER ORDERED** denying as moot Defendants' Motion for Leave to
12 File Excess Pages (Doc. 40.)

13 **IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion for Leave to
14 File Surreply (Doc. 49.)

15 Dated this 24th day of September, 2025.

Honorable John J. Tuchi
United States District Judge